[Civ. No. 2668. Fifth Dist. May 31, 1977.]

LEE McCOY, Plaintiff, Cross-defendant and Appellant, v.
LEE T. WEST et al., Defendants, Cross-complainants and Appellants;
VELMA McCOY, Cross-defendant, Cross-complainant and Appellant.

298

COUNSEL

Bultman, Bianchi & Kelly and Henry E. Bianchi for Plaintiff, Cross-defendant and Appellant and for Cross-defendant, Cross-complainant and Appellant.

Stephen E. Wall for Defendants, Cross-complainants and Appellants.

## OPINION

**GARGANO, Acting P. J.**—In early 1971 Lee McCoy (hereafter McCoy) owned a moving and storage business with offices located in the cities of Fresno, Tulare and Bakersfield; the business included a lease on a warehouse in Fresno, a lease on a warehouse in Tulare, and apparently a fee interest in a warehouse and the real property on which it was situated in Bakersfield; the business also included storage accounts, various items of furniture and fixtures, motor vehicles and moving equipment.

In April 1971 McCoy commenced negotiations to sell the business to Gary Workman and Workman's two partners; he represented to Workman that the business had an average gross income of $300,000. However, when McCoy refused to display the business' accounting records and the income tax returns, negotiations were terminated.

In June 1971 Lee West and Stuart McCreight became interested in purchasing McCoy's moving and storage business; McCoy led the prospective purchasers to believe that for the previous five years the business had an average annual gross income of $180,000 and an average annual net income of $59,000. When West and McCreight asked to see the income tax returns, McCoy refused; however, he told them they could see the business' accounting records but would have to go to the Fresno office to do so. Thereupon, the two men went to Fresno and were shown the books by McCoy's wife, Velma; she assisted the prospective buyers in analyzing the contents of the books.

Upon returning to Bakersfield, West and McCreight agreed to purchase the business at the purchase price of $100,000; it was agreed that the buyers would make a $15,000 down payment and that they would pay the balance in instalments of $850 per month with interest at the rate of 8 percent per annum. Later, McCreight was unable to come up with the necessary capital to make his share of the downpayment and J. B. Turner became West's partner in the acquisition; a contract was signed by McCoy as seller, and Lee West, J. B. Turner and their respective wives as the buyers. The buyers took possession of the business and all of its components on November 1, 1971. A short time later they discovered that some of the equipment was not in the good condition McCoy had represented it to be. They also discovered that certain storage accounts McCoy had described did not exist. Lastly, they determined that the business did not have the income capabilities McCoy had represented. Thereafter, the buyers defaulted on their

contract; at the time of their default, they had made only two instalment payments.

On March 20, 1972, McCoy served the buyers with a notice of default. Approximately two weeks later the buyers sent McCoy a notice of rescission grounded primarily upon McCoy's fraudulent representations as to the past earnings of the business; in the rescission notice the buyers offered to operate the business until May 1, 1972, in order to avoid unnecessary damage.

On April 20, 1972, McCoy commenced this action in the superior court against the buyers for repossession of the business, for breach of the agreement of sale and for reimbursement for certain taxes he had paid. By stipulation the business was ordered returned to McCoy without prejudice to either side as to any cause of action, defense or issue that might be raised in the ensuing litigation; subsequently McCoy amended his complaint in order to seek damages for the loss of certain items of property he alleged were not returned to him and for damage to some of the property that was returned to him.

On May 25, 1972, the buyers filed an answer to McCoy's complaint denying the material allegations thereof. Pursuant to section 1692 of the Civil Code, the buyers also filed a cross-complaint against McCoy and McCoy's wife, Velma, to recover the $15,000 downpayment and the two $850 instalment payments the buyers made pursuant to the purchase contract.[1]

---

[1]Section 1692 of the Civil Code provides:

"When a contract has been rescinded in whole or in part, any party to the contract may seek relief based upon such rescission by (a) bringing an action to recover any money or thing owing to him by any other party to the contract as a consequence of such rescission or for any other relief to which he may be entitled under the circumstances or (b) asserting such rescission by way of defense or cross-complaint.

"If in an action or proceeding a party seeks relief based upon rescission and the court determines that the contract has not been rescinded, the court may grant any party to the action any other relief to which he may be entitled under the circumstances.

"A claim for damages is not inconsistent with a claim for relief based upon rescission. The aggrieved party shall be awarded complete relief, including restitution of benefits, if any, conferred by him as a result of the transaction and any consequential damages to which he is entitled; but such relief shall not include duplicate or inconsistent items of recovery.

"If in an action or proceeding a party seeks relief based upon rescission, the court may require the party to whom such relief is granted to make any compensation to the other which justice may require and may otherwise in its judgment adjust the equities between the parties."

On July 26, 1972, Velma McCoy filed a cross-complaint against the buyers for the nonpayment of wages and for the imposition of the penalty provided by section 203 of the Labor Code. Thereafter, McCoy amended his answer to the buyers' cross-complaint to set up as an offset against the buyers' claim for the return of the downpayment and the instalment payments an amount equal to the reasonable rental value of the business property while it was in the possession of the buyers. The cause then proceeded to court trial on the issues raised by the pleadings.

At the conclusion of the trial, the trial judge filed a notice of intended decision determining that the buyers had effected a valid rescission of the contract of sale on the ground of fraud and that they were entitled to reimbursement of the sum of $16,700 for the return of their downpayment and the two instalment payments they made to McCoy. The court also determined that McCoy was entitled to damages in the amount of $5,003.39 for missing and damaged property and for reimbursement of the tax payments he had made. In addition, the court decided that the sum of $9,600 was the reasonable rental value of the various items of property comprising the business while the buyers were in possession of those items of property and that McCoy was entitled to an offset in that amount. The court denied the buyers punitive damages and determined that Velma McCoy's claim for wages was not established. Findings of fact and conclusions of law were waived and judgment was entered in accordance with the notice of intended decision. All parties have appealed.

■ At the outset we compendiously reject McCoy's contention that the evidence was insufficient to sustain the trial court's implied finding that he defrauded the buyers in the sale of the business. It suffices to state that there was substantial evidence for the court to find that McCoy induced the buyers to purchase the business through materially false representations (see generally *Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183]); prolonged discussion on this point would serve no useful purpose.

We turn to the buyers' appeal. They do not challenge the general rule that, while a vendee of real property who rescinds a land sale contract pursuant to section 1691 of the Civil Code because of the vendor's fraud can recover the purchase money paid by him, the vendor is entitled to the reasonable rental value of the land while it was in the vendee's possession. (See Civ. Code, § 1692, *Runyan* v. *Pacific Air Industries, Inc.* (1970) 2 Cal.3d 304, 315, 318 [85 Cal.Rptr. 138, 466 P.2d 682]; see also

*Kent* v. *Clark* (1942) 20 Cal.2d 779, 785-786 [128 P.2d 868, 142 A.L.R. 576]; *Warfield* v. *Richey* (1959) 167 Cal.App.2d 93, 97-98 [334 P.2d 101].) Nor do they raise any issue that the amount of rent fixed by the court on the various items that were in their possession was not commensurate with what they would have had to pay had they been leasing everything directly from McCoy. The buyers insist that although the court properly found that a valid rescission had been effected it erred in awarding McCoy $9,600 in rental since the business enterprise failed to generate any profit during the period the buyers were in possession.

■ Preliminarily, it should be noted that when a vendor has defrauded an innocent vendee in the sale of property and there has been a rescission and a restoration of the subject matter, the amount to be credited to the guilty vendor for the innocent vendee's use of the subject matter is not, strictly speaking, rental; " '. . . there is no contractual relation which imposes on the vendee the obligation to reimburse the vendor for rent; it is only to the extent that the vendee has profited by the undertaking that he is required in good conscience to [compensate] the vendor.'." (*Pendell* v. *Warren* (1929) 101 Cal.App. 407, 410 [281 P. 658].) In short, the right of a guilty vendor whose contract of sale has been rescinded by a defrauded vendee to be compensated for the use of the property sold to the innocent vendee while it was in the vendee's possession is not an absolute one; the right is grounded upon equitable principles and finds its genesis in the proposition that a rescinding vendee should not be permitted to retain an unjust benefit as the result of the rescission. (See generally 17 Am.Jur.2d (1964) Contracts, § 512, pp. 994-996.) Furthermore, albeit it has been stated that a vendee seeking rescission should account for the value of the use of the subject matter during the time he was in possession, it also has been said that such an issue is a matter to be raised by the vendor in his pleadings (*Montgomery* v. *Meyerstein* (1921) 186 Cal. 459, 465 [199 P. 800]) and that the burden of proof as to such value is upon the vendor (*Elrod-Oas Home Bldg. Co.* v. *Mensor* (1932) 120 Cal.App. 485, 490 [8 P.2d 171]).

■ To recapitulate, the fundamental object of rescission is to restore the parties as far as possible to the economic position they occupied before they entered into the contract. (*Runyan* v. *Pacific Air Industries, Inc., supra,* 2 Cal.3d 304, 316; see also Civ. Code, § 1692, 3d par. and 4th par.; 3 Pomeroy, Equity Jurisprudence (5th ed. 1941) § 910, p. 578.) We believe that the Restatement of Restitution properly articulates the principle to be applied where, as here, the subject matter of the rescission is a business enterprise ostensibly existing for the purpose of

making a profit and the vendor is more at fault than the vendee. Although the guilty vendor is not fully restored to his original economic position unless compensation is made for the use of the subject matter for the period during which the innocent vendee was in possession, nevertheless, when compensating the guilty vendor for such use of the subject matter the innocent vendee is entitled to pay either the reasonable rental value thereof or the profits, if any, which he has made from the subject matter, whichever is less. (Rest., Restitution, § 157, com. a, p. 622.) In this way the guilty vendor, the one more at fault, bears the loss, if any, resulting from a failure to use the subject matter profitably. (See Rest., Restitution, § 157, com. e, p. 628; see also Civ. Code, § 3517.)

 Applying these principles to the case at bench, we have concluded that there is no substantial evidence in the record to support the $9,600 offset which the court allowed McCoy as compensation for the buyers' use of the various items of business property during the period that this property was in the buyers' possession. As we have indicated, the buyers purchased a business, and the offset the court allowed merely purported to be a reasonable rental for the various items of property. McCoy presented no evidence to prove that the buyers' profits from the business enterprise equalled or exceeded the reasonable rental figure reached by the court. In fact, McCoy presented no evidence to prove that the buyers made any profits or received any similar benefits from the operation of the business itself. If anything, there was uncontradicted testimony to the contrary; Lee West testified that the business did not "pay its way."

In summary, we hold that where, as here, the vendor of a business enterprise existing for the purpose of making a profit sells the business to a buyer under a contract of sale, and thereafter the contract of sale is rescinded on the grounds of the vendor's fraud, the vendor is not entitled to receive the reasonable rental value for the vendee's use of the business without proof that the vendee's profits equalled or exceeded the reasonable rental value. We further hold that absent such proof, the guilty vendor is at most entitled to the profits, if any, the vendee may have made in the operation of the business during the period that the vendee was in possession thereof. (Cf. *Bray* v. *Lowery* (1912) 163 Cal. 256, 262 [124 P. 1004].)

We consider next Velma McCoy's contention that the court erred in denying her claim against the buyers for wages. Specifically, she

complains because the court did not award her $1,317.40 for unpaid overtime, $250 for services rendered during evenings and weekends in answering the business telephone at her house, and $25 for the last day she worked.

When the buyers initially took possession and commenced operating the moving and storage business they retained Velma McCoy as the managing employee of the Fresno office. They hired her on the understanding that she would work 44 hours a week and receive a weekly compensation of $125.

■ The only testimony concerning the claim of $25 for the last day of work is Velma McCoy's explanation that she worked Friday March 31, 1972, although the buyers terminated her employment as of the end of the day before. This testimony is insufficient to establish a claim for the $25. Velma McCoy did not testify that when she worked Friday March 31 she was unaware of her discharge. Her claim for the $25 is based upon the employment contract and not upon a theory of quantum meruit. Neither does she claim that her discharge was wrongful. It is clear that after discharge there can be no recovery on the employment contract for wages accruing after discharge. (See 56 C.J.S. (1948) Master and Servant, § 122, p. 565.)

■ Velma McCoy's remaining claims for additional compensation are based upon her testimony that she often worked more than a 44-hour week and that she provided telephone answering services for the business from her home during evenings and weekends. However, according to Velma McCoy's own testimony, the parties never arrived at a mutual understanding regarding her being compensated for the alleged overtime and extra services; it is the general rule that where, as here, the employee rendering the additional services receives a regular salary and the services rendered are similar or nearly similar to the employee's regular duties, the obligation to pay for the additional services must be based upon an express contract. (*Sowash* v. *Emerson* (1916) 32 Cal.App. 13, 19 [161 P. 1018]; see *Cany* v. *Halleck* (1858) 9 Cal. 198, 201-202; 32 Cal.Jur.2d (1956) Master and Servant, § 34, p. 440.)

In any event, Velma McCoy made out the weekly paychecks at the Fresno office. Yet she never indicated in her own paychecks that she worked overtime or performed additional telephonic answering services from her home. By her own admission, she never attempted to include payment for such services in her weekly paychecks, nor did she make

any protest or raise any question as to the sufficiency of her payments as the weekly checks were prepared. It is the rule that evidence that an employee has received weekly checks without objection as to the sufficiency of the payment supports a finding that the employee has been fully paid for the week covered by such checks and is not entitled to extra compensation. (*Maurice* v. *Lehnhardt* (1921) 53 Cal.App. 402, 403 [200 P. 359]; see 32 Cal.Jur.2d (1956) Master and Servant, § 34, p. 442.)

That part of the judgment awarding cross-defendant Lee McCoy a $9,600 offset for the reasonable rental value of the business property while in the possession of the buyers is reversed. All other portions of the judgment from which appeals have been taken are affirmed. Cross-complainants Lee West, J. B. Turner and their respective wives shall recover their costs on appeal.

Franson, J., and Hopper, J., concurred.