## BEMER AVIATION, INC.

v.

## HUGHES HELICOPTER, INC.

### Civ. A. No. 84–0821.

United States District Court, E.D. Pennsylvania.

Oct. 21, 1985.

Arthur Alan Wolk, Richard E. Genter, Philadelphia, Pa., for plaintiff.

Susan L. Claypoole, J. Bruce McKissock, Philadelphia, Pa., for Hughes Helicopter, Inc. and Horsham Valley Airways, Inc.

Phillip D. Bostwick, David J. Cynamon, Shaw, Pittman, Potts & Trowbridge, Washington, D.C., Stephen Harris, Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for Horsham Valley Airways, Inc.

Fred J. Meier, Richard Roland, Kern & Wooley, Los Angeles, Cal., for Hughes Helicopter, Inc.

## MEMORANDUM AND ORDER

KATZ, District Judge.

Defendant Hughes Helicopter, Inc. ("Hughes"), has moved for Judgment

N.O.V. or for a New Trial following a jury verdict of $1,170,547.23 including punitive damages of $1,100,000.00 against Hughes and in favor of Bemer Aviation, Inc. ("Bemer"). At trial, plaintiff demonstrated that defendant sold as new a used and defective helicopter it had manufactured, that the helicopter was a lemon because its bearings were designed too light for the load and that the helicopter fell out of the sky into a New York shopping center parking lot. Plaintiff also showed that defendant had, as a practical matter, trivialized and ignored more than fifty prior warnings of the design defect. For the reasons below, I deny defendant's post-trial motions.

## I. *Background*

In its suit against Hughes, Bemer demanded rescission of its contract to purchase a Hughes helicopter as well as damages resulting from a design defect in the helicopter.

On October 16, 1981, plaintiff Bemer Aviation, Inc., purchased a Hughes Model 269C helicopter from defendant Hughes. Hughes' Sales Manager, Dennis Mance, represented to Bruce Bemer, President of Bemer Aviation, both before and at the time of the sale, that the helicopter was a "new demonstrator." Bemer was interested only in a new helicopter. He agreed to buy this particular helicopter only after Mance assured him that the aircraft had been operated solely by Hughes employees. Hughes' invoice described the helicopter as a "demo."

In December, 1981, Bemer received a routine announcement from Hughes concerning a subscription to technical publications. On the bottom of the document, however, was a note describing the helicopter as a "repossession that we had been operating as a demonstrator." Bemer was concerned, thought the notation was a mistake, and after his busy season, began to investigate the prior use of his helicopter.

His inquiries to Hughes met with promises to look into the matter.

In March of 1982, Mr. Mance finally admitted that someone had owned the helicopter before Hughes sold it to Bemer. When no further information was forthcoming, Bemer flew to Atlanta to inspect the repair orders of a company which had performed some maintenance on his aircraft. Through this examination, Bemer learned the identity of the helicopter's first owner. He also learned that the original owner had returned the helicopter to Hughes because of its many mechanical problems. Despite this information, Bemer continued to make payments on the helicopter until May, 1982. On July 2, 1982, his counsel wrote a letter to Hughes which demanded rescission.

A different set of facts gave rise to Bemer's products liability claims. On February 22, 1982, the helicopter Bemer bought from Hughes was forced to land in a parking lot of a shopping center in New York when smoke filled the cockpit and power was lost. Nobody was hurt, but repairs to the helicopter amounted to about $11,500. Bemer asserted that a design defect in the lower pulley bearing of the Model 269C helicopter caused the accident.

Hughes cross-claimed against Horsham Valley Airways, contending that Horsham's negligent repair of the helicopter during previous maintenance caused the accident.[*]

Overwhelming evidence supported the plaintiff's version, and the jury sided with Bemer.

The evidence showed that Hughes selected a bearing for its lower pulley that was too small and was not of aircraft-quality. Because the bearing could not handle its load, it burned the grease needed to lubricate and cool it and seized in flight.

Hughes had notice of the problem with the bearing. In fact, there were over fifty reports of problems similar to those experienced by Bemer's aircraft. These previous

---

[*] Neither side disputes the jury's determination that Horsham Valley's conduct played no role in the forced landing of the helicopter.

294

reports should have put the defendant on notice that there were problems with the bearing. Instead, Hughes addressed a symptom—the lack of lubrication in the system—rather than the root of the problem. Hughes sent notices to customers advising them that the bearing should be inspected and lubricated after 300 hours. The reports of previous incidents, however, revealed that many of the bearings did not survive 300 hours. Although Hughes knew that a different type of grease would at least prolong the life of the bearing, it failed to advise its customers of this fact.

The jury determined that the plaintiff was entitled to rescind the contract due to its justifiable reliance on Hughes' material, fraudulent misrepresentations. The jury also awarded Bemer $70,547.23 as consequential damages on plaintiff's claim for rescission.

In addition, the jury found that Hughes manufactured a defective helicopter and that the defect proximately caused damages to Bemer. The jury awarded no additional compensatory damages to the plaintiff on its products liability claim, obviously heeding the Court's instruction not to award duplicative damages for the rescission and products liability claims.

As punitive damages for Hughes' misconduct in dealing with the defect in the helicopter, the jury awarded plaintiff $1 million. As punitive damages for Hughes' misconduct in fraudulently selling a used helicopter as a new one, the jury awarded $100,000. Finally, the jury ruled against Hughes on its crossclaim against Horsham Valley Airways.

## II. *Rescission*

### A. *Choice of Law*

Defendant Hughes claims that Bemer was not entitled to rescind the contract for a variety of reasons. In its motion before trial Hughes argued that the law of Pennsylvania should govern because plaintiffs asked for rescission based on fraudulent misrepresentation. Hughes noted that Pennsylvania was where Hughes' sales

representative was located and where some of the negotiations for the sale of the helicopter took place. The Court disagreed, determining that California law should apply on the rescission claim and charged the jury accordingly.

Rescission is a remedy designed to put the parties in the position they were in before the contract was executed. As such, it invalidates the contract from the beginning. *Gilmore v. Northeast Dodge Co., Inc.*, 420 A.2d 504, 278 Pa.Super. 209 (Pa.Super.Ct.1980). The law governing the contract, therefore, determines under what circumstances a contract may be invalidated *ab initio*. In the purchase agreement for the helicopter, the choice of law clause provided that the purchase agreement shall be governed by the law of the State of California:

"... [t]his agreement shall be deemed to have been made in, and shall be construed and governed by the laws of the State of California."

Such clauses are generally controlling. *Boase v. Lee Rubber & Tire Corp.*, 437 F.2d 527 (3d Cir.1976).

In its post-trial motions, Hughes no longer challenges the application of California law to the rescission claim. Rather, Hughes now characterizes Bemer's rescission claim as an action for common law fraud. Hughes' discussion of Bemer's conduct in the context of common law fraud misses the mark. The question is under what circumstances could Bemer undo, or rescind, its contract with Hughes. To answer this question, the Court must look to the law governing the contract, the law of California.

### B. *Promptness of Notice To Rescind*

Hughes argues that the law required Bemer to give prompt notice of his desire to rescind the contract. It contends that Bemer knew of the helicopter's history in December, 1981, but did not notify Hughes of its desire to rescind until July 2, 1982. I reject this argument. First, California law requires prompt notice of rescission only

when delay has been "substantially prejudicial to the other party."[1] Defendant Hughes has not demonstrated that it was substantially prejudiced by any delay in the notice of rescission.

Bemer had his first inkling that the helicopter had had a prior owner in December, 1981, when he received a document from Hughes which included a notation that the helicopter was a "repossession." At first, the plaintiff "thought it was just a mistake." N.T. April 10, 1985, at 75. He continued to make payments to Hughes while independently investigating the origins of the helicopter. Officials from Hughes told Bemer that they would check into the matter and proceeded to put him off for several weeks. Finally, in March, 1982, a Hughes employee told Bemer that the helicopter had been owned for a short time by someone else who returned it because he "didn't like it." *Id.* at 78. In April, 1982, Bemer flew to a company in Atlanta which had repaired the helicopter. Only at this time did Bemer learn that the helicopter's prior owner had had repeated problems with the aircraft.

In *Howell v. Courtesy Chevrolet, Inc.,* 16 Cal.App.3d 391, 94 Cal.Rptr. 33 (Cal. App.Ct.1971), the court stated:

"A vendee who has been defrauded by his vendor is entitled to a reasonable time to investigate the falsity of the representations and the time so consumed cannot be charged as unreasonable delay."

16 Cal.App.3d. at 405–06, 94 Cal.Rptr. at 41 (quoting *Williams v. Marshall,* 37 Cal.2d 445, 455, 235 P.2d 372, 378 (Cal.1951)).[2]

■ Bemer is not charged with unreasonable delay for the time between December, 1981 and, at least, March of the following year. Moreover, it was during this period, on February 22, 1982, that the helicopter had to make the forced landing which formed the predicate for the products liability aspect of this case. Hughes has pointed to no evidence to show that Bemer's failure to provide notice of rescission substantially prejudiced Hughes in any way.[3] The question of substantial prejudice was submitted to the jury, which resolved it in Bemer's favor. After reviewing the evidence, I independently conclude

1. California Civil Code § 1693 provides:

"When relief based upon rescission is claimed in an action or proceeding, such relief shall not be denied because of delay in giving notice of rescission *unless such delay has been substantially prejudicial to the other party.*

A party who has received benefits by reason of a contract that is subject to rescission and who in an action or proceeding seeks relief based upon rescission shall not be denied relief because of a delay in restoring or in tendering restoration of such benefits before judgment unless such delay has been substantially prejudicial to the other party; but the court may make a tender of restoration a condition of its judgment." (emphasis added).

California Civil Code § 1691 states:

"Subject to Section 1693, to effect a rescission a party to the contract must, promptly upon *discovering the facts which entitle* him to rescind if he is free from duress, menace, undue influence or disability and is aware of his right to rescind:

(a) *Give notice of rescission* to the party as to whom he rescinds; and

(b) Restore to the other party everything of value which he has received from him under

the contract or offer to restore the same upon condition that the other party do likewise, unless the latter is unable or positively refuses to do so.

When notice of rescission has not otherwise been given or an offer to restore the benefits received under the contract has not otherwise been made, the service of a pleading in an action or proceeding that seeks relief based on rescission shall be deemed to be such notice or offer or both."

By its terms, Bemer's notification of a desire to rescind was an offer to restore the helicopter to Hughes.

2. In *Howell,* the first indication of grounds for rescission occurred in May, 1965 and notice of rescission was not made until November, 1965.

3. The helicopter had to be repaired again in April, 1982. Even if this occurred after plaintiff received confirmation of facts justifying rescission, defendant has made no showing that it was substantially prejudiced by plaintiff not offering rescission before this incident occurred. Hughes' failure to consider rescission at any time leads this Court to believe that had Bemer tendered the helicopter to Hughes at an earlier date, the result would have been no different.

that the jury's determination was correct and that rescission was appropriate.

### C. *Fraudulent Misrepresentation*

The jury was also correct in its determination that Hughes' conduct amounted to fraudulent misrepresentation entitling plaintiff to rescind the contract. In order to rescind on the grounds of fraudulent misrepresentation under California law, plaintiff had to prove:

 (a) a false representation or concealment or nondisclosure of a material fact,

 (b) made with the intention of inducing another person to rely thereon; and

 (c) justifiable reliance on the misrepresentation which causes damage.

*Gold v. Los Angeles Democratic League,* 49 Cal.App.3d 365, 373–74, 122 Cal.Rptr. 732, 738 (Cal.Ct.App.1975).

' The defendant argues that Bemer's reliance on Hughes' representation that the helicopter was a demonstrator was not justifiable because Bemer had access to the aircraft's books. These books contained the helicopter's maintenance and service history. I reject this contention. In *Horn v. Guaranty Chevrolet Motors,* 270 Cal. App.2d 477, 75 Cal.Rptr. 871 (Cal.Ct.App. 1969), the plaintiff bought a car represented to him as being new but which actually had been previously stolen and damaged. Plaintiff brought the car back to the dealer for repairs about a dozen times before eventually learning of its history from the Department of Motor Vehicles. Defendant argued that, given its condition, Horn should have realized that the car was not new. The court rejected this argument in the following fashion:

" 'An independent investigation or an examination of property does not preclude reliance on misrepresentations where the falsity of the statement is not apparent from an inspection, or the person making the representations has superior knowledge, or the party relying thereon is not

competent to judge the facts without expert assistance.' "

270 Cal.App.2d at 482, 75 Cal.Rptr. at 874 (quoting *Bagdasarian v. Gragnon,* 31 Cal.2d 744, 748, 192 P.2d 935, 937 (Cal. 1948)).

█ In the present case, the Hughes sales representative certainly had superior knowledge about the helicopter, and an inspection of the craft would not have revealed that it had been owned previously. Moreover, Bemer not only testified that he had no previous experience at reading logbooks but that he did not even see the logbooks until he picked up the helicopter from Hughes. This event occurred after the purchase agreement had been executed. While the logbooks did indicate previous maintenance on the helicopter, the only "owner" ever noted was Hughes. For these reasons, it can hardly be said that Bemer's reliance on Hughes' misrepresentations was "preposterous or irrational." *Van Meter v. Bent Construction Co.,* 46 Cal.2d 588, 595, 297 P.2d 644, 648 (Cal. 1956).

### D. *Damages*

█ Defendant objects to the jury's award of $70,597.23 as damages on the rescission claim on the grounds that the jury did not reduce these damages for income which plaintiff received from the operation of the helicopter.[4] The burden is on the seller to prove that such offset is proper. *West v. McCoy,* 70 Cal.App.3d 295, 138 Cal.Rptr. 660 (Cal.App.Ct.1977). But Hughes failed to raise this matter in its pleadings, a requirement of California law. *West v. McCoy,* 70 Cal.App.3d at 302, 138 Cal.Rptr. at 664. In addition, Hughes failed to request that the Court charge the jury that Bemer's damages be reduced by the income plaintiff received from the helicopter's operation.

Notwithstanding these failures on Hughes' part, § 1692 of the California Civil Code does provide that,

---

**4.** Defendant does not contend that Bemer was not entitled to recover damages caused by reliance on Hughes' fraudulent misrepresenta-tions, nor would such a contention be meritorious under California law. Cal.Civ.Code § 1692.

"if in an action or proceeding a party seeks relief based upon rescission, the court may require the party to whom such relief is granted to make any compensation to the other which justice may require and may otherwise in its judgment adjust the equities between the parties." Cal.Civ.Code § 1692.

In *Horn, supra,* defendant contended that the amount awarded for rescission was excessive, since it did not take into account the car's rental value during the time plaintiff had possession. The Court of Appeals refused to offset any amount. It stated:

"Inasmuch as there was sufficient evidence for the jury to conclude that the plaintiff had been the victim of a deceit and since the plaintiff did not get the use of a new car in a new condition, it was not error to fail to offset rental value against the amount returned to plaintiff."

270 Cal.App.2d at 483, 75 Cal.Rptr. at 875.

■ *Horn* presents a situation similar to that in this case. Like the plaintiff in *Horn,* Bemer was the victim of fraudulent misrepresentation and was not afforded a new helicopter in a new condition. There is no evidence that Bemer was in any way unjustly enriched by the use of the helicopter. Had plaintiff purchased a helicopter other than the one he did buy, he would have had comparable income. Moreover, the defendant has offered no proof on the amount for which it could have rented out a defective helicopter had Bemer never purchased the particular aircraft in question. The rental value of this defective helicopter was negligible. I, therefore, follow the rationale in *Horn* and exercise my equitable power under California Civil Code § 1692 to decline to offset plaintiff's income from the helicopter against the jury's damage award.[5]

### III. *Election of Remedies*

Defendant next argues that it was error for the court to allow Bemer to obtain judgment on both rescission and product liability claims. Hughes maintains that the Court should have forced Bemer to make an election between strict liability and rescission because those remedies were inconsistent in this case. There is, however, nothing inconsistent between plaintiff's claim for rescission and its claim for product liability. The doctrine of election of remedies requires a plaintiff to choose between two inconsistent remedies in causes of action "based on the same set of facts." *Baker v. Superior Court, City of San Diego,* 150 Cal.App.3d 140, 145, 197 Cal. Rptr. 480, 483 (Cal.App.Ct.1983).

■ Although it would have been inconsistent for Bemer to seek both rescission and damages for fraud, there is no inconsistency between Bemer's rescission and product liability claims. The rescission claim arises from facts surrounding the sale of the helicopter to Bemer. The product liability claim relates to a design defect in the helicopter that resulted in its forced landing. Thus, there is no overlap of facts to render the remedies inconsistent.

### IV. *Product Liability*

#### A. *Choice of Law*

In its trial brief, Hughes urged the Court to apply the law of the State of New York to Bemer's negligence and strict liability claims. The Court accepted Hughes' argument and did apply New York law in its charge to the jury on these claims. Hughes now maintains that the Court should have applied the law of Pennsylvania. This contention cannot stand.

■ Under Pennsylvania choice of law rules, the Court must examine the contacts between the forum and the cause of action and then weigh the interests of the relevant states in order to determine which state's law to apply. *Melville v. American Home Assurance Co.,* 584 F.2d 1306 (3d Cir.1978). In this case, Bemer Aviation,

---

5. Hughes does not challenge the award of punitive damages on the rescission claim. California law allows the imposition of exemplary damages upon a finding of fraud. *See* Cal.Civ. Code § 3294.

298

Inc. is a citizen of Connecticut. Hughes is a citizen of California. Most dealings regarding the sale of the helicopter occurred in Pennsylvania. New York is where the accident occurred. In its brief on the issue, plaintiffs urged that Pennsylvania law apply to its strict liability and negligence claims against Hughes. The Court rejected this claim because, for the purposes of Bemer's product liability claims, the forum where the sales contract was negotiated would seem to have little relevance.[6]

■ The contacts between New York and the product liability claim are substantial. The accident occurred in the State of New York; moreover, Bemer leased the helicopter to a company which, under its contract with Bemer, was to use the aircraft solely in New York.[7] Rental money was paid in New York as well. In addition to these substantial contacts, New York has a greater interest than the other possible forums in making sure that helicopters flying New York skies are free from defect and will not fall into the parking lots of shopping centers. Weighing the contacts between the forums and Bemer's product liability claims with the interests of the various states in the application of their laws, the Court agreed with defendant's

trial position that New York law should apply.

### B. *Punitive Damages*

Hughes does not allege that the evidence regarding Bemer's product liability claim was insufficient to establish liability. It argues instead that the evidence did not support the imposition of punitive damages and, in any event, such damages were excessive. I reject both assertions.[8]

In *Brink's, Inc. v. City of New York,* 546 F.Supp. 403 (S.D.N.Y.1982), *aff'd* 717 F.2d 700 (2d Cir.1983), a suit for breach of contract and negligence, the court stated that in order to gain punitive damages under New York law, there must be:

"misconduct which transgresses mere negligence as when the wrongdoer has acted 'maliciously, wantonly or with a recklessness that betokens an important motive of vindictiveness' ... or has engaged in 'outrageous or intentional misconduct' or with 'reckless or wanton disregard of the safety of others.' "

546 F.Supp. at 411–12 (quoting *Sharapata v. Town of Islip,* 56 N.Y.2d 332, 452 N.Y. S.2d 347, 437 N.E.2d 1104 (N.Y.1982) (citations omitted).[9] *See also Roy Export Co.*

---

**6.** Hughes speciously argues that *Mellon Bank, N.A. v. Aetna Business Credit Inc.,* 619 F.2d 1001 (3d Cir.1980), stands for the proposition that Pennsylvania law applies where the court does not rule on choice of law motions before trial. In *Mellon Bank,* the court simply noted that the parties waived any objection to the application of Pennsylvania law by not raising the issue. 619 F.2d at 1005 n. 1.

**7.** That company, Northeast Helicopter, Inc., was originally a plaintiff in this action, but dropped its claims before trial.

**8.** Hughes contends that the jury found that Bemer was entitled to no compensatory damages arising from its product liability claims, and that the plaintiff is therefore entitled to no punitive damages. The jury found, however, that Bemer was entitled to damages on its product liability claims. Special interrogatory number 2(a), which the jury answered "yes", asked whether the plaintiff was entitled to damages because of a breach of warranty or a tort committed by Hughes. I instructed the jury that it should only answer question number 2(a) in the affirmative if it found that Hughes' helicopter

was defective *and* if that defect proximately caused damages to the plaintiff. Special interrogatory number 2(b) asked, "[W]hat compensatory damages (other than those awarded in question 1(b), can plaintiff recover from Hughes?" Question 1(b) dealt with consequential damages on Bemer's rescission claim. The fact that the jury awarded no additional compensatory damages means only that it determined that product liability damages duplicated damages already awarded. Thus, the jury's failure to indicate additional damages in question 2(b) shows that the jury intelligently applied the Court's charge.

**9.** The Court charged the jury that punitive damages for Bemer's product liability claims could be awarded:

if Hughes['] conduct was reckless malic[ious], wanton oppressi[ve] or outrageous. Outrageous means a person acts with reckless indifference to the rights of others. A person seeking punitive damages in actions predicated on [a] defective product must prove either reckless or outrageous conduct by clear and convincing proof. A person's conduct is in

*Establishment of Vaduz, Liechtenstein, Black Inc. v. CBS*, 503 F.Supp. 1137 (S.D. N.Y.1980), *aff'd* 672 F.2d 1095 (2d. Cir. 1982), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982).

 The jury's determination that Hughes' conduct in this case warranted the imposition of punitive damages is amply supported by the evidence.

The fact that Hughes used the wrong bearing in the helicopter is not, in itself, sufficiently outrageous to entitle Bemer to recover punitive damages. It is Hughes' failure to take any meaningful steps to address the obvious problems with the helicopter that makes its conduct outrageous and which warrants the imposition of punitive damages. In the face of over fifty similar incidents, Hughes never ordered an inspection of all the bearings on its Model 269C helicopter, never examined the bearings which had already failed, and never tested new bearings to determine the nature of the problem. Instead, Hughes treated the defect as a problem with lubrication rather than with the bearing itself. Hughes sent an announcement to helicopter·owners to check lubrication in the lower pulley bearing at 300 hours although many of the bearing failures had occurred before that time. Hughes also knew that the use of a different grease would at least prolong the life of the bearing. For unknown reasons, Hughes did not notify its customers of this information.

The FAA called a meeting to discuss the lower pulley problem in November, 1979.

At the meeting, Hughes reported that it had no plans to order inspection of all its bearings, nor did it plan to change to a better quality bearing. Moreover, the minutes kept by the FAA official attending the meeting indicated that the FAA knew of only eleven lower pulley bearing failures at that time.

These facts show that, despite evidence of a persistent problem with its lower pulley bearing in its Model 269C helicopter, Hughes conducted a woefully insufficient investigation of the problem. Hughes' only response to the potentially dangerous condition in its helicopters was superficial and addressed the symptom and not the cause. Hughes acted outrageously and with callous, conscious and reckless disregard for the safety of persons flying its helicopters.

Hughes next argues that the punitive damages awarded by the jury in this case were excessive. Hughes notes that compensatory damages on Bemer's product liability claims amounted to approximately $11,500 at most. Thus, Hughes maintains, the punitive damage award does not bear a reasonable relation to *actual* compensatory damages.

Under New York law, a court should reduce a jury's award of punitive damages only where "the amount of the award is so excessive that it shocks the judicial conscience or it appears that it is the result of passion or prejudice." *Brink's, Inc. v. City of New York, supra*, 546 F.Supp. at 413. *See also Roy Export, etc. v. CBS*,

---

reckless disregard of others' safety if he doesn't act or intentionally fails to do an act which [it] was his duty to do, [knowing] or having reason to know facts which would lead a reasonable person to realize, not only that [his] conduct [creates] an unreasonable risk of harm to another but also that such risk is substantially greater than that which is necessary for a reasonable [purpose].

Recklessness may consist of knowing facts which create a high risk of harm to another and completely lacking or failing to act [in] disregard or indifference—in other words, the actor has knowledge or reason to know the facts and acts in a way that is reckless even though he knows that those facts mean there is danger to another person.

It's an objective standard that you apply. There are no fixed standards as to the amount. You consider the harm, the degree of reprehensibility and the deterrent effect and damages, if any. Your award for punitive damages must not be the result of passion or prejudice but only to punish and deter.

Again, don't duplicate on punitive damages if you reach that and only award punitive damages if the wrongful act was performed or ratified by a managerial employee, if he was acting within the scope of his employment. (N.T. April 19, 1985, at 113–14) )

Hughes did not object to this charge.

*supra* 503 F.Supp. at 1154. Contrary to Hughes' contention, punitive damages need bear no specific ratio to compensatory damages to be reasonable under New York law. *Hartford Accident and Indemnity Co. v. Village of Hempstead,* 422 N.Y.S.2d 47, 53 n. 15, 48 N.Y.2d 218, 227 n. 15, 397 N.E.2d 737, 743 n. 15 (N.Y.1979). *See also Roy Export, etc. v. CBS,* 672 F.2d at 1154.

■ In assessing punitive damages the jury may take into account not only the actual compensatory damages to which the plaintiff is entitled, but also the nature and extent of the danger caused by the defendant's outrageous conduct. *Brink's Inc. v. City of New York, supra,* 546 F.Supp. at 412–13. In this case, it is deceptive to focus on the slight physical damage to Bemer's helicopter. Hughes' acts and omissions created a real risk to life. Persons in the helicopter and on the ground could have been seriously hurt or killed when the lower pulley bearing failed. It is merely fortuitous that in this emergency and in the other incidents involving Hughes' helicopter, no one was hurt—at least so far.

Such happenstance neither diminishes the outrageousness of Hughes' conduct nor the potential danger to individuals—nor does it mitigate the need to deter Hughes through the imposition of punitive damages. In *Brink's, Inc. v. City of New York, supra,* the jury awarded New York City $1 million in compensatory and five million dollars in punitive damages against Brinks. Brinks had a contract with New York City which made Brinks responsible for collecting coins from parking meters. Brinks officials had strong evidence that its employees were stealing coins, but did nothing about the thefts. New York sued on theories of negligence and breach of contract. The court determined that punitive damages were appropriate, but reduced the award of exemplary damages to $1.5 million and distinguished between that case and cases in which the outrageous conduct of the defendants threatens human life. The Court noted that *Brink's* was

> "not a case of products liability involving an injurious or poisonous drug that has been widely distributed, *or a vehicle with a dangerously defective mechanism that has been installed in thousands of cars with their potentiality for death or lifetime crippling effects.... In such instances, there is justification for substantial punitive damage awards.*"

546 F.Supp. at 414 (emphasis added) (footnote omitted).

■ In addition to the potential harm that a defendant's conduct poses, juries are allowed to consider the defendant's ability to pay when assessing an award of punitive damages. *Brink's Inc. v. City of New York, supra* 717 F.2d 700, 706–07 (2d Cir. 1983). Since the purpose of punitive damages is deterrence (*Williams v. City of New York,* 508 F.2d 356 (2d Cir.1974)), an award of punitive damages must be large enough to force a defendant (and other potential defendants) to change their behavior. *Brink's, Inc. v. City of New York,* 546 F.Supp. at 413; *Roy Export, etc., v. CBS,* 503 F.Supp. at 1154.

■ Hughes Helicopter, Inc. has a net worth of approximately $473 million. Balancing the wealth of the defendant, the hazard to human life, and the outrageousness of Hughes' conduct, this $1 million award of punitive damages did not shock my conscience, nor can I say it was the result of passion or prejudice.[10] In its

---

10. The result would be the same if we applied the law of California. Under California law, a court should overturn a jury's award of exemplary damages only where that award appears to be the result of passion or prejudice. *Horn v. Guaranty Chevrolet Motors,* 270 Cal.App.2d 477, 484, 75 Cal.Rptr. 871, 876 (Cal.Ct.App.1969). *See* Cal.Civ.Code § 3294. Exemplary damages may be awarded when the defendant is aware of the probable dangerous consequences of his conduct, but willfully fails to avoid those consequences. *Hasson v. Ford Motor Co.,* 32 Cal.3d 388, 402, 650 P.2d 1171, 1179–80, 185 Cal.Rptr. 654, 663, (Cal.1982), *cert. dismissed,* 459 U.S. 1190, 103 S.Ct. 1167, 75 L.Ed.2d 422 (1983). Although the jury may take the amount of compensatory damages into account, it is just one factor in the determination. *Grimshaw v. Ford Motor Co.,* 119 Cal.App.3d 757, 819, 174 Cal. Rptr. 348, 388 (Cal.App.Ct.1981). One Califor-

briefs on these motions, Hughes even argues that it did not have sufficient time before trial to test the undersized bearings in its helicopters that caused this aircraft to fall out of the sky. One would hope that the jury's award of punitive damages would serve its purpose at some point. The feeling producing this jury verdict was an anger appropriate to Hughes' corporate callousness. As Hughes' shoddy practices were amply proven in the courtroom, I will not disturb the jury's finding.

## C. *Admission Of Service And Operation Reports*

Hughes argues that it was error for the Court to admit some thirty-six Service and Operation Reports (SORs) into evidence. These SORs were reports to Hughes of mechanical problems encountered by operators of Hughes helicopters. The defendant contends that the SORs were prejudicial because the incidents reported in them were not sufficiently similar to the incident in this case. Hughes also maintains that the SORs contain double hearsay.

A review of the circumstances leading to the admission of the SORs reveals that Hughes has waived its right to complain. Hughes originally moved *in limine* to exclude the SORs. I refused to rule abstractly *in limine*. Instead, I ruled that before the SORs would be admitted, the plaintiff would have to lay a responsible foundation for each SOR, showing that there was sufficient similarity between Bemer's accident and the incident reported to Hughes in the SOR. N.T. April 12, 1985, at 3–5.

When the plaintiff's expert, Lester Kerfoot, testified, however, plaintiff's counsel did not offer the SORs. Kerfoot testified that in his opinion there was an unreasonably dangerous defect in the Model 269C helicopter. When asked on direct examination to explain, Mr. Kerfoot stated that he had "been through" the SORs. N.T. April 12, 1985, at 96. Defense counsel never objected that the SORs were not the type of information reasonably relied upon by experts in the field. Fed.R.Evid. 703. Defendant's motion *in limine* did not address this point; it merely concerned the admissibility of the reports. Under Rule 703, if the information upon which the expert relies is "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence." Fed.R.Evid. 703. Thus, the motion *in limine* was not an objection to Kerfoot's use of the SORs in forming his opinion.

Ironically, it was not plaintiff's counsel who opened the door to the admission of the SORs. Rather, defense counsel, on cross-examination, took Kerfoot, plaintiff's expert, through each and every Service and Operation Report to try to show the jury that the reported incidents were *dissimilar* to the incident that led to the trial and that Hughes was not responsible for any of the problems associated with Bemer's helicopter. Defense counsel made a strategic decision to explore the substance of the SORs. Once the defendant examined the witness on each SOR, he opened the door for the plaintiff to pursue the SORs on redirect with Mr. Kerfoot and with other witnesses.[11] *See Burgess v. Premier Corp.*, 727 F.2d 826, 834 (9th Cir. 1984); 1 J. Weinstein and M. Berger, *Weinstein's Evidence*, § 103[02], at 12–15 (1982)

nia appellate court upheld a trial judge's refusal to instruct a jury that punitive damages must bear "a reasonable relation to actual damages." *Horn v. Guaranty Chevrolet Motors, supra,* 270 Cal.App.3d at 485, 75 Cal.Rptr. at 876. A California court assessing a jury's award of punitive damages may also take into account the defendant's wealth, the nature of his acts and the effect of such acts on the plaintiffs and the public. *Grimshaw v. Ford Motor Co.,* 119 Cal.App.3d at 819, 174 Cal.Rptr. at 388; *Devlin v. Kearny Mesa/AMC/Jeep/Renault, Inc.,* 155 Cal.App.3d

381, 390, 202 Cal.Rptr. 204, 209 (Cal.App.Ct. 1984).

11. The SORs were formally admitted during the testimony of plaintiff's other expert, Manuel Raefsky. Although there was some discussion and apparent confusion on the part of defense counsel as to the Court's ruling on the motion *in limine* and the previous use of the reports during trial (N.T. April 15, 1985, at 72–73), defendant never objected to any specific SORs.

(attorney can waive his client's right to raise an error on appeal by deliberately eliciting inadmissible evidence).

■ Moreover, I find that the SORs were business records of incidents sufficiently similar to the incident here to justify their admission into evidence. Further, the differences between the SORs and this incident were fully developed on cross examination and fairly presented to the jury, so there was no unfair prejudice from their use at trial. They were admissible as a reasonable basis for the experts' opinions and to show defendant's knowledge of problems with this helicopter model.

### D. *Motion to Strike the Testimony of Manuel Raefsky*

■ Defendant Hughes' final contention is that the Court erred in refusing to strike the expert testimony of Mauel Raefsky, a metallurgical engineer who testified that the defect in Bemer's helicopter was Hughes' use of the wrong bearing. Hughes objects to Raefsky's testimony on the grounds of unfair prejudice and surprise. Hughes notes that in plaintiff's answers to interrogatories, plaintiff stated that Raefsky would testify that "the lower pulley bearings failed due to lack of lubrication which is caused by the system lacking an adequate means for retaining lubrication, inadequate lubrication instructions, inadequate warnings as to aircraft washings and inadequate warnings as to preflight inspection of the bearings." Defendant claims prejudice and unfair surprise because it was not prepared for the substance of Raefsky's testimony, namely, that the bearings themselves were defective.

In *Meyers v. Pennypack Woods Home Ownership Association*, 559 F.2d 894 (3d Cir.1977), the Court of Appeals held that the district court abused its discretion by excluding the testimony of two witnesses not listed in a pretrial memorandum. The Court considered the following factors in making its determination:

"(1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the court's order."
559 F.2d at 904–05.

Under Rule 26(e)(1)(B) of the Federal Rules of Civil Procedure, plaintiff did have a duty to supplement his answers to expert witness interrogatories; however, under the *Meyers* analysis, it was not error to refuse to strike Raefsky's testimony. The court stated in *Meyers* that the exclusion of critical evidence is an " 'extreme' sanction, ... not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." 559 F.2d at 905 (citation omitted). I find that there is no real evidence of willful deception or flagrant disregard of an order by the plaintiff.

I also find that the unfair surprise and prejudice to the defendant was minimal. Defendant's own expert, Stuart Matheson, addressed the issue of the quality of the bearing in his expert report. During Matheson's deposition, plaintiff's counsel repeatedly questioned the witness about whether or not the problem with the lower pulley bearing was really with the bearing itself and not with its lubrication. From these questions posed to Hughes' expert, Hughes had notice that Bemer questioned the integrity of the bearing. Defendant's counsel was not unprepared for Raefsky's opinion. He cross-examined Raefsky effectively and at length, and two of defendant's own witnesses gave extensive testimony that the bearing was not defective.

Counsel for Hughes contributed to its alleged unpreparedness by never deposing Raefsky before trial, even though he was listed as an expert witness. For all the voluminous pretrial motions and discovery, this useful discovery was omitted. Nor did counsel request a continuance to allow him to prepare his cross-examination of Raef-

sky. He requested that court adjourn early to allow for more preparation time, and the Court granted that request. N.T. April 15, 1985, at 212–13. In light of the minimal prejudice, lack of bad faith, and the steps defense counsel failed to take to cure whatever prejudice defendant did suffer, I will not strike Manuel Raefsky's testimony.

## V. *Pre-Judgment Interest*

■ Plaintiff has requested pre-judgment interest on its award of damages for rescission.

Under California law, the statute provides:

"(a) Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day...." Cal.Civ.Code § 3287(a).

Plaintiff is entitled to prejudgment interest as a matter of right if, as a matter of law, damages are "certain, or capable of being made certain by calculation." *Levy-Zentner Co. v. Southern Pacific Transportation Co.*, 74 Cal.App.3d 762, 798, 142 Cal. Rptr. 1, 24 (Cal.Ct.App.1977).

As one California court has noted, the statutory test of whether damages are certain or capable of being made certain by calculation "is not an easy one to apply." *Marine Terminals Corp. v. Paceco, Inc.*, 145 Cal.App.3d 991, 996, 193 Cal.Rptr. 687, 689 (Cal.Ct.App.1983). However the court in *Marine Terminals* derived a number of principles from the case law to clarify the test. Pre-judgment interest is *not* allowable "where the amount of damages is unliquidated and depends upon the jury's resolution of conflicting evidence." Cal.

App.3d at 996, 193 Cal.Rptr. at 689 (citations omitted). But "the defendants' denial of *liability* in itself does not make the damages uncertain." 145 Cal.App.3d at 996, 193 Cal.Rptr. at 689 (citations omitted) (emphasis in original). Rather, a court will deem damages capable of being made certain by calculation "if the amount due can be determined by reference to a fixed standard: e.g., a payment schedule ...[,] a readily ascertainable market value ...[,] or data supplied by plaintiff to defendant...." 145 Cal.App.3d at 196–97, 193 Cal.Rptr. at 689–90 (citations omitted). Applying these principles to the facts of this case, I find that plaintiff is entitled to pre-judgment interest since plaintiffs' damages were capable of being made certain by calculation.

First, plaintiffs' damages were liquidated. At trial, plaintiff presented documentary evidence to show that it was entitled to $70,547.23 in compensatory damages. The jury awarded plaintiff damages in exactly this amount.[12]

Although Hughes denied *both* liability and the amount of damages it owed, plaintiff is entitled to pre-judgment interest "where there is essentially no dispute between the parties concerning the basis of computation of damages if any are recoverable but where their dispute centers on the issue of liability giving rise to damages." *Leff v. Gunter*, 33 Cal.3d 508, 519, 658 P.2d 740, 788, 189 Cal.Rptr. 377, 385 (Cal.1983).

In the present action, Hughes disputed the amount of plaintiff's claim by alleging that it was entitled to set-off the income that plaintiff earned by its use of the helicopter. However, California case law holds that a plaintiff is entitled to pre-judgment

---

**12.** Hughes contends that the Court erred by allowing the jury to take out an exhibit that summarized Bemer's claims for damages. Hughes asserts that the summary sheet "permitted plaintiff's damage claims to be highlighted over facts which established that the damages were actually less." Hughes Helicopter, Inc.'s Brief in Support of Motions for Judgment N.O.V. and New Trial, at 29 n. 9.

I fail to see what prejudice Hughes could suffer from the jury having a list which summa-

rized the information that appeared in some twenty odd exhibits that plaintiff submitted. These exhibits included evidence of plaintiff's payments under the installment contract, payments for insurance, payments for repairs, as well as miscellaneous payments for maintenance. Plaintiff's summary sheet obviously served to simplify and clarify Bemer's damage claims; it did not prejudicially highlight such claims.

interest even if the plaintiff's certain and liquidated claim under a contract is reduced by a defendant's unliquidated set-off or counterclaim. *Hansen v. Covell*, 218 Cal. 622, 629–31, 24 P.2d 772, 775–76 (Cal.1933); *E.L. White, Inc. v. City of Huntingdon Beach*, 138 Cal.App.3d 366, 378, 187 Cal. Rptr. 879, 887 (Cal.Ct.App.1982); *Bentz Plumbing & Heating v. Favaloro*, 128 Cal. App.3d 145, 152, 180 Cal.Rptr. 223, 228 (Cal.App.Ct.1982); *Leaf v. Phil Rauch, Inc.*, 47 Cal.App.3d 371, 375–76, 120 Cal. Rptr. 749, 753 (Cal.App.Ct.1975).[13]

The present case is one in which damages are capable of being made certain by calculation by reference to a fixed standard. *Leaf v. Phil Rauch, Inc.*, 47 Cal. App.3d 371, 120 Cal.Rptr. 749 (Cal.App.Ct. 1975). In *Leaf*, the buyers of a new automobile sued the dealer and the manufacturer and sought to rescind a conditional sales contract for the automobile. The plaintiffs won at trial but appealed, in part, because the trial judge failed to award them prejugment interest on their award of compensatory and consequential damages. Regarding the award of pre-judgment interest in cases of rescission, the court noted:

"In an action based upon rescission of a contract, the plaintiff's right to repayment of moneys paid under the contract is fixed by the rescission, *and interest on the moneys paid thus is recoverable from the date of rescission.*"

47 Cal.App.3d at 377, 120 Cal.Rptr. at 752 (citations omitted) (emphasis added).

The court also held:

"In an action to enforce rescission, the successful plaintiff is entitled to recover not only the consideration he gave under the contract, but also consequential damages.... Since it is the act of rescission which fixes his right to recover consequential damages, *interest on such dam-*

*ages should run from the date of rescission.*"

47 Cal.App.3d at 378, 120 Cal.Rptr. at 753 (citations omitted) (emphasis added).

Applying these rules for awarding prejudgment interest to the facts of this case, I note that the jury awarded the plaintiff $70,547.23 in compensatory damages. These damages consisted of payments under the installment contract, payments for insurance, payments for repairs, as well as other payments incurred in connection with the acquisition and maintenance of the helicopter. All of these payments were certain, or capable of being made certain by calculation, for purposes of Civil Code § 3287(a). Once these payments were established, it required mere "simple mathematics" to compute the damages. *Leff v. Gunter*, 33 Cal.3d 508, 519, 658 P.2d 740, 747, 189 Cal.Rptr. 377, 385 (Cal.1983). *See also Tripp v. Swoap*, 17 Cal.3d 671, 682, 552 P.2d 749, 757, 131 Cal.Rptr. 789, 797 (Cal.1976). ("Once an applicant's entitlement to benefits is established, the calculation of the amount of such benefits becomes a mechanical exercise of applying the appropriate standard of assistance. The recovery of wrongfully withheld benefits thus is not subject to the uncertainty that would otherwise bar an award of interest.").

As in *Leaf*, plaintiff is entitled to prejudgment interest for consequential damages from the *date of rescission*. In this case, rescission occurred on July 2, 1982, when plaintiff's counsel mailed notice of rescission to Hughes.

The sole remaining issue is the rate at which interest should be awarded. That rate is set at 12% per annum by statute. Cal.Code of Civ.P. § 1577. *Blue Cross of Northern California v. Cory*, 120 Cal. App.3d 723, 746, 174 Cal.Rptr. 901, 914–15 (Cal.Ct.App.1981).[14]

---

**13.** The Supreme Court of California has also awarded pre-judgment interest even though the amount of damages claimed was more than the amount awarded and even though a plaintiff's efforts to mitigate damages had resulted in a reduced award. *Coleman Engineering Co. v. North American Aviation, Inc.*, 65 Cal.2d 396,

408–09, 420 P.2d 713, 722, 55 Cal.Rptr. 1, 10 (Cal.1966).

**14.** California Code of Civil Procedure § 1577 provides:

"In addition to any damages, penalties, or fines for which a person may be liable under

For the reasons outlined above, plaintiff is awarded interest at the rate of 12% per annum on the sum of $70,547.23 from July 2, 1982.

## ORDER

AND NOW, this 21st day of October, 1985, after consideration of defendant's Motions for Judgment N.O.V. or for a New Trial and plaintiff's response thereto, it is ORDERED that defendant's motions are DENIED. Pre-judgment interest is allowed in accordance with the accompanying Memorandum.

other provisions of law, any person who fails to report or pay or deliver unclaimed property within the time prescribed by the chapter, shall pay to the State Controller interest at the

rate of 12 percent per annum on such property or value thereof from the date such property should have been paid or delivered."