[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DAMAGES
The above-captioned matter was tried to the jury upon all issues of liability. The parties had agreed to a bifurcation between liability and damages with further agreement that, should plaintiff prevail on liability with the jury, damages would be tried to the court. Plaintiff prevailed on all counts of its claim against defendant in a jury verdict rendered March 23, 2001.[1]
The case set out claims of breach of contract, breach of duty of good faith and fair dealing, fraudulent misrepresentation and negligent misrepresentation, arising out of the sale of a Milford residence in 1992.
The skeletal facts include:
1) Plaintiff purchased defendant's home at 686 East Broadway on October 30, 1992 for $105,000.
2) Plaintiff paid $35,000 down with her own funds and the balance of $70,000 via a loan secured by a mortgage.
3) In 1995, plaintiff engaged a contractor to remodel and/or enclose a deck which extended in a certain direction approximately 14 feet from the house.
4) During this work, and the concomitant attention it brought to the property's situation, it was discovered that the residence, as it sat, encroached over a neighbor's land, and the plaintiff's project had to be abandoned and cut back, including removal of the offending deck.
5) The liability phase of the plaintiff's four-count action examined CT Page 4968 the facts surrounding the pre-purchase dealings between the parties and the representations made by defendant seller.
6) The jury found for the plaintiff and against the defendant on all four counts, which, as noted, sounded as follows:
— breach of contract
— breach of good faith and fair dealing
— fraudulent misrepresentation
— negligent misrepresentation.
7) The court heard the damages — remedy aspect of plaintiff's recission and restitution claim on several occasions in the subsequent period.
The parties have brought to the court's attention and to the body of evidence many financial facts which are said to be relevant to restitution inherent in the recission of this real transaction.[2]
The court now turns its attention to the myriad aspects of restitutionary amounts plaintiff is to recover from defendant and then to deductions therefrom or credits to which defendant would be entitled.
 A.) Plaintiff's Deposit or Down Payment
No contention has arisen that would suggest plaintiff is not entitled to recover funds paid to defendant for the residence in 1992. Plaintiff used $35,000 of her own funds to constitute a portion of the $105,000 purchase price. Plaintiff is obviously entitled to recover this "down payment" amount and the summary will so indicate.
 B.) Principal still owed by Plaintiff to her bank resulting from the $70,000 mortgage loan
As noted earlier, the balance of the purchase price was borrowed from a lender, said loan having been secured by a mortgage which, of course, must be paid off when the title is conveyed back to defendant in recission.[3]
The court selected June 1, 2002 as the date which should form a line of demarcation as to monetary calculations. (See footnote 3.) By said date, the principal paid by plaintiff on her mortgage will total $7,508.17. Subtracted from the $70,000 originally borrowed, the principal necessary CT Page 4969 to close out that debt is $62,491.83.[4] Plaintiff is entitled to recover this amount and the summary will so indicate.
 C.) Interest Plaintiff Paid to the Mortgage Lender
It is at this juncture that we begin to separate ourselves from a discussion of money that flowed from plaintiff to defendant and which would obviously have to be returned by defendant in recission restitution. Interest on the mortgage is money that flowed to the bank, not defendant. Defendant has urged that restitution need only be paid as to monies defendant received from plaintiff.
The court is not persuaded. First, the jury found defendant liable on all counts, including those alleging fraud and failing to deal in good faith. Thus, the actionable conduct preceded or continued at least up to and through the 1992 closings, at which time it had to be abundantly clear to defendant that plaintiff was borrowing $70,000 to give defendant. Defendant is thus in no position to equitably assert that plaintiff must suffer that interest loss (which in a mortgage's early life constitutes the bulk of monthly payments). When viewed in another light it appears more clearly necessary to rule that said interest go back to plaintiff. It is only an artifact of the fraud that plaintiff resided at the house for a period lengthy enough to cause the interest to be so significant. Under defendant's construction, plaintiff would have lost the interest amount and have to make restitution to herself, in a real sense, out of, say, the attorney's fees she is to recover herein. The court notes that Metcalfe v. Talarski, 213 Conn. 145 (1989) apparently approved the victim's recovery of interest amounts paid. Yet, the interest there was apparently paid to the breaching seller, rather than a bank; thus the equities suggesting its return to plaintiff were arguably stronger. However, it cannot be the law that plaintiff has to credit defendant with fair rental value for the period of her innocent occupancyand still be held to suffer the loss of interest on the mortgage. On balance, fairness clearly inclines toward recovery for plaintiff in a way that might not be so if there were no fraud. That is to say, defendant should not be heard to complain at having to reimburse plaintiff for mortgage interest paid; its sizeable amount is a direct function of the misrepresentation which went undiscovered without fault of plaintiff for years. Therefore, the interest paid to plaintiff's lender is appropriate restitution and is, up until June 1, 2002, found to be $47,111.52. The summary will so indicate.
 D.) Other "Carrying Costs" Incurred by Plaintiff During the Ownership
Plaintiff seeks restitution for amounts paid in the areas of property CT Page 4970 tax, insurance, and 1992 closing costs. The same rationale which formed the court's basis for the award of interest applies here. Those figures have been found by the court to be:
 Property Tax: $ 19,743.77 Flood Insurance: $ 4,577.73 Hazard Insurance: $ 5,102.50 Closing Costs: $ 3,685.97
These amounts are also appropriate restitution elements, and will be reflected in the summary and final order.
 E. Cost of Removal of the Encroaching Deck
Plaintiff seeks $3,500 as to this cost. The court has determined that no award is appropriate. The work began as a remodeling. The effort led to discovery of the encroachment. Removal was then required. The court is unable to determine that portion of the expenditure properly traceable to the need to demolish. Counsel for plaintiff urges that such a recoverable demolition-related cost "cannot be zero." This is logically true, but the evidence does not ineluctably lead to any number, and an award, therefore, of some amount would violate the burden of proof.
No award is made for this expense.
 F.) Attorney's Fees and Expenses
Until the time of the final court hearing, this number was determined to be $55,889.25. The court was then requested to add an amount to represent the time counsel for plaintiff expended in preparation for and attendance at said hearing. Additionally, counsel correctly noted that further time would be consumed in preparing for the court the calculations which would bring up to date various elements of recovery. At the final hearing, plaintiff's counsel opined that seven (7) hours would be required to cover these facets. When plaintiff's April 16, 2002 submission was received, a new total attorney's fee was submitted ($57,693.25). Thus, an extra $1,804.00 was included. The court is without the benefit it had as to the earlier figure (as to which defendant conceded accuracy.). The court has no specifics as to the time or rate for the new supplemental amount. As a result, the court has concluded that $1000 represents a fair supplemental amount; when added to the prior undisputed amount, the total becomes $56,889.25.
Plaintiff also seeks attorney's costs in the amount of $4,371.75. The court remains somewhat uncertain as to whether these expenses represent part of the 1992 closing costs or whether they were incurred in this CT Page 4971 litigation. It is probable that they were litigation-related and it is also fairest to defendant to so conclude.
The significance of the distinction is that the closing and carrying costs may become part of the foundation of an award of recoverable interest. To place these costs with the litigation fees is to exclude them from an interest calculations. The court places said costs in this category and said amount will not be factored into any interest award.
This $4,371.75 costs figure brings the recoverable attorney's fees and costs to $61,011.00.
 G. Fair Rental Value of Plaintiff's Occupancy
Attention must now be focused upon areas in which plaintiff must "credit" defendant. Findings in these matters will serve as reductions in the final restitutionary award.
Each party produced the testimony of real estate professionals regarding the property's rental value in the time period 1992 to present. The figures submitted were different and also required consideration of the fact that there came a time when the residence came to have no deck. Plaintiff produced Ms. Diana Nytko. Defendant proffered Thomas Woodward. Plaintiff's witness was a licensed appraiser and defendant's witness was not.
Ms. Nytko's opinion for the period October, 1992 to August, 1995 was that the rental value for the parcel was $675 — $700 per month. Thirty four (34) months at $675 — $700 per month equals $22,950 to $23,800 for the period. Mr. Woodward's opinion regarding said time was $750 — $800 per month, which equals $22,950 to $23,800. While Ms. Nytko had the better appraisal credentials (indeed, Mr. Woodward had none), Mr. Woodward had extensive experience with rentals in the western Milford waterfront area. The court concludes that the appropriate figure for this early period is $750 per month or $25,500.
This leaves the period September, 1995 to the present, or 81 months (i.e., to June, 2002.) As to this period, Mr. Woodward was not asked by defendant to opine specifically, but he did say that his figure would not be less, in that, despite the absence of the deck, prices had or have escalated. Ms. Nytko felt that the post-desk period averaged $759 per month. The court has accepted this figure, and as a result, this 81-month period represents a rental value of $60,479.
The fair rental value is found to be $85,979. The summary will reflect this deduction from plaintiff's award. CT Page 4972
 H. Income Tax Savings Realized by Plaintiff by Virtue of Deductions Taken for Mortgage Interest and Municipal Property Taxes
This issue appears to present a question never resolved in our case law, but as to which a balancing of equities inclines toward defendant. Simply put, an equitable anomaly would appear were plaintiff to recoup all expenses and not be required to credit the hard tax savings some of those expenses generated. On this topic, each party offered accounting calculations; from William Sloman for defendant and from Ronald Milone, for plaintiff.
The calculations were astoundingly close, and appeared carefully calculated and articulated. Defendant's evidence produced a conclusion of $14,164, while plaintiff's figure was $14,960. The court has been left almost entirely without a framework for a grisly audit of this discrepancy, but has determined the appropriate methodology of resolution.
One would expect defendant to urge the higher number, for his benefit grows with its size. However, defendant produced the lower figure. If one then makes the obvious assumption that defendant ought to bear the burden of proof in establishing his "credits, then it is fair to hold him to his number, almost as though it were an admission against interest.
Therefore, the court will deduct $14,164 from plaintiff's award.
 I. Benefit Accruing to Defendant Resulting from Investment Potential Inherent in Defendant's Having Use of Plaintiff's Money
The plaintiff has sought recovery of an amount tantamount to the benefit defendant might have enjoyed via the possession of her money since 1992. Plaintiff's accountant-expert proffered this amount to total $46,031. No defense evidence was produced in opposition. Defendant contends this is not an appropriate element of restitution. The court agrees.
First, it seems that if defendant is to be required to reimburse plaintiff for the interest she paid to obtain the money, he ought not have to pay further for this arguable benefit it bestowed upon him. (The court is aware that this thought, if germane at all, pertains more to the $70,000 plaintiff borrowed than to the $35,000 cost plaintiff paid.)
More importantly, the court is not intellectually persuaded that this CT Page 4973 aspect falls within the circle of equitable restitution in the recission context. It is noted that plaintiff's primary and original usage of this claim's argument was employed in an effort to dissuade the court from crediting defendant for plaintiff's income tax savings. This comeback seems to have crossed the line from pure restitution into, at most, pure consequential damages. The court is mindful of the oft-expressed admonition that one cannot rescind a transaction and recover typical consequential damages, as in breach of contract actions. See Metcalfe v.Talarski, 213 Conn. 145, 159 (1989).
It is the court's sense that this claim represents a bridge too far, taking us more deeply into a fine-tuning of numerical ramifications, beyond where precedent reveals other courts to have gone.
Additionally, it should be noted that an award of interest on the reimbursement amount is to be set out and awarded, infra. This is something of a counter-balance, equitably speaking, to the claim discussed in this section. Would not one of its premises be to cover this section's claim?
The court declines to award an amount representing benefit to defendant for use of plaintiff's money.
 J. Statutory Interest
Plaintiff has not styled this claim to be one for "statutory" interest, but that appears to be its basis.
C.G.S. § 37-3a provides: ". . . [i]nterest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable."
This element of recovery is within the court's discretion and the court will allow the claim. It should be noted that such an award seems equitable when one considers certain areas in which plaintiff will not or may not recover. Plaintiff has not been awarded any amount for the potential benefits defendant received during the period he had control of her funds or some of them. Additionally, plaintiff is not entitled to recovery for any amount which would represent the likely appreciation in the value of the residence during her decade with it.
On the other hand, the court considers it fairest to truncate the time period over which the annual multiplier of ten per cent should be utilized. That is to say, the interest award will be calculated for the period encompassing the 1992 transfer of the residence to plaintiff CT Page 4974 forward to the jury's verdict in 2001. Since said date, it does not strike the court that continuing interest accrual seems quite as equitable. From the verdict, on March 23, 2001, the court had to deal with the matter as time allowed within the mutual schedule opportunities of counsel and the court. The pace was not in equitable keeping with the prospect of a growing debt of interest during that last year. As a result, interest will be calculated from November 1, 1992 until March, 2001. The summary will thus reflect a full year's interest for each of the 8 calendar years 1993 through 2000. In 1992 and in 2001, two full months in each year were within the interest-generating time frame. The summary will thus reflect 8 years and 1/3 of a year (4 months) as the duration of the interest-producing interval.
 K. Summary
A.) Amounts plaintiff would be entitled to recover from defendant:
$ 35,000.00 Deposit or down payment.
 62,491.83 Remainder of principal plaintiff owes on her mortgage.
 47,111.52 Interest paid by plaintiff upon her mortgage.
 33,109.97 "Carrying Costs" incurred ----------- by plaintiff during her ownership.
TOTAL: $147,923.32
B.) Amounts plaintiff must credit defendant:
 $ 85,979,00 Fair rental value of plaintiff' s occupancy.
 $ 14,164.00 Tax savings realized by plaintiff from deductions for mortgage interest and property tax. -----------
Total $100,143.00 CT Page 4975
 C.) Statutory Interest:
One must first determine the net amount after crediting" or discounting the amount defendant owes plaintiff.
 $147,923.32 — 100,143.00 ----------- $ 47,780.32
It is therefore upon a net of $47,780.32 that one must calculate 10 per cent interest. As noted in section J, supra, one would begin with 8 full calendar years. Ten per cent of $47,780.32 is $4,778.03; this figure multiplied by 8.33 years equals $41,200.99.
It should be noted that interest is not awarded upon the separate, stand-alone entitlement to attorney's fees and expenses.
The court awards $41,200.99 in statutory interest.
Thus, defendant must pay to plaintiff:
 $ 47,780.32 — (net restitution) 41,200.99 — (statutory interest) 61,011.00 — (attorney's fees and expenses) ----------- $149,992.31
The court has not determined, nor have the parties discussed, which party will pay off plaintiff's mortgage lender. If plaintiff is to pay it, the above figure stands. If defendant is to pay it, one would deduct the amount defendant pays plaintiff's bank from $147,992.31.
 FINAL ORDER
Plaintiff is to convey the subject property to defendant on or before June 1, 2002 and defendant is to accept said conveyance.
At the same time, defendant is to pay plaintiff restitution in the amount of $149,992.31.
 ___________________ Nadeau, J.