CITY OF MILFORD *v.* COPPOLA CONSTRUCTION COMPANY, INC.
(AC 26106)

Flynn, McLachlan and Foti, Js.*

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued October 20, 2005—officially released February 14, 2006

*Paul W. Orth*, with whom was *Peter R. Reynolds*, for the appellant (plaintiff).

*Lawrence G. Rosenthal*, for the appellee (defendant).

*Opinion*

FLYNN, J. The plaintiff, the city of Milford, appeals from the judgment of the trial court denying its application to modify and correct the arbitration award and confirming the award of $136,787.50 in favor of the defendant, Coppola Construction Company, Inc. The plaintiff claims that the court should have modified the arbitrator's award pursuant to General Statutes § 52-419 (a)[1] because the award (1) failed to conform to the

[1] General Statutes § 52-419 (a) provides: "Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated, or, when the court is not in session, any judge thereof, shall make an order modifying or correcting the award if it finds any of the following defects: (1) If there has been an evident material miscalculation of figures or an evident material mistake in the description of any person, thing or property referred to in the award; (2) if the arbitrators have awarded upon a matter not submitted to them unless it is a matter not affecting the merits of the decision upon the matters submitted; or (3) if the award is imperfect in matter of form not affecting the merits of the controversy."

submission and (2) contained material miscalculations. The defendant claims that the submission to arbitration was unrestricted because the plaintiff rescinded the contract that contained the limiting provisions, and that the award conforms to the submission. The court determined that because the contract between the parties provided that not all types of damages were amenable to arbitration, the parties made a restricted submission but that the award conformed to that submission. We affirm the judgment of the trial court.

Resolution of the plaintiff's appeal requires us to determine first whether the submission to the arbitrator was restricted or unrestricted. We conclude that the court correctly determined that the submission was restricted because, as stated in the arbitration clause, the parties waived claims against each other for consequential damages, with the exception of anticipated lost profit arising directly from the work, and, therefore, claims for such waived damages were not arbitrable. The scope of the trial court's review and our review on appeal, however, is only as broad as the nature of the restrictions allow. We conclude that the trial court's determinations that no prohibited consequential damages were awarded and that the award conformed to the submission were within the scope of that court's review and were proper given the nature of the restrictions at issue, and we decline to go beyond that to review de novo the evidence before the arbitrator.

The following facts are relevant to our resolution of this appeal. On December 11, 2000, the plaintiff entered into a contract with the defendant to elevate six private residential structures in Milford for $294,000. Paragraph 9.10.4 of the contract provided, in part, that claims and disputes arising out of the contract would be resolved by arbitration, except, however, according to paragraph 9.11, the parties waived claims against each other for consequential damages, excepting only anticipated lost

profits arising directly from the work. After seven months of delay caused by issues regarding code requirements that had arisen between the plaintiff and the office of the state building inspector, the defendant began lifting the first house and discovered that the house had a type of framing different from what was anticipated. The defendant negotiated a change order that increased the contract price to $309,000 to compensate the defendant for the condition it encountered. The change order was confirmed by the defendant's October 1, 2001 letter. Thereafter, it was discovered that the other five houses also had this type of different framing, and the city ordered that work stop until the parties could be agreed on a price. On May 17, 2002, the plaintiff wrote a letter to the defendant stating: "Inasmuch as [the defendant] is unwilling or unable to resume and complete the work at the price set forth in the contract, or at any mutually agreed upon price, the [plaintiff] has no choice but to cancel the contract." At that point, one house was complete, one had been withdrawn from the project by its private owner and four remained to be elevated.

The submission the parties made to arbitration was invoked by the following demand, which we summarize. On March 27, 2003, the defendant submitted what it termed an arbitration statement. In that statement, the defendant alleged that the plaintiff had rescinded the contract and that the contract provisions, except for dispute resolution, were null and void because the plaintiff had abandoned them. The defendant alleged that the plaintiff "attempted to concoct reasons for the rescission such as [that the defendant] defaulted on its obligations under the contract. There was no default by [the defendant] for the reason stated by [the plaintiff] that it was unable to complete the project because the parties were unable to fix a price for the changed condition." The defendant further alleged that it had

bought specialized equipment for the project, which sat idle for seven months "while [the plaintiff] corrected the plans to allow a permit to be obtained." The defendant stated that it had a cause of action for wrongful termination and for bad faith against the plaintiff and therefore was entitled to damages for idle equipment, demobilization costs, field costs, lost profit and attorney's fees. The plaintiff, in its April 8, 2003 answer, denied all causes of action and all claimed damages. The plaintiff alleged, inter alia, as special defenses that the defendant persistently failed to carry out work in accordance with the contract, that the defendant refused to perform work at the contract price, that the purpose of the contract was being frustrated at a time when the project was less than 20 percent complete and grant moneys were ending, and that, under such circumstances, on May 17, 2002, the plaintiff terminated the contract, directing the defendant not to resume work and to leave the project. The parties submitted their dispute to arbitration. On August 11, 2003, an arbitrator awarded the defendant $136,787.50 in damages for lost profits, idle equipment and materials, plus interest.[2] The

[2] The award in its entirety states the following: "I, the undersigned arbitrator, having been duly sworn in accordance with the arbitration agreement dated December 11, 2000, and having heard all proofs and allegations of the parties, award as follows:

"For the [defendant]

| | | |
|---|---|---|
| Lost Profits | | $ 104,105.00 |
| Idle Equipment | | $ 26,366.67 |
| Materials | . | $ 6,315.83 |
| | Subtotal | $ 136,787.50 |
| Interest | | $ 13,802.60 |
| | Total | $ 150,590.10 |

"Accordingly, [the plaintiff] shall pay [the defendant] the sum of $150,590.10.

"The fees and expenses of the [American Dispute Resolution] Center totaling $5,092.33 are to be borne equally by the parties, therefore, [the plaintiff] shall pay [the defendant] the sum of $1250.00 representing [the plaintiff's] portion of the filing fee paid by [the defendant.]

plaintiff filed an application to modify and correct the arbitration award. The court denied the plaintiff's motion on December 1, 2004, confirming the arbitrator's award with 10 percent interest per year from August 1, 2002. This appeal followed.

I

We first set forth our standard of review. If the parties choose to set limits on the arbitrator's powers, then the parties will be bound by those limits. *Carroll* v. *Aetna Casualty & Surety Co.*, 189 Conn. 16, 20, 453 A.2d 1158 (1983). "The process which governs the confirmation of arbitral awards is well settled by our cases. If the parties have agreed in the underlying contract that their disputes shall be resolved by arbitration, the arbitration clause in the contract is a written submission to arbitration. . . . This submission can be invoked by a demand for arbitration by one or both parties when a dispute arises. The agreement for submission constitutes the charter for the entire ensuing arbitration proceedings." (Citations omitted.) *Vail* v. *American Way Homes, Inc.*, 181 Conn. 449, 451, 435 A.2d 993 (1980).

"[Our Supreme Court] has for many years wholeheartedly endorsed arbitration as an effective alternative method of settling disputes 'intended to avoid the formalities, delay, expense and vexation of ordinary litigation.' *Bridgeport* v. *Bridgeport Police Local 1159*, 183 Conn. 102, 107, 438 A.2d 1171 (1981); *Administrative & Residual Employees Union* v. *State*, 200 Conn. 345, 349, 510 A.2d 989 (1986). When arbitration is created by contract, we recognize that its autonomy can only be preserved by minimal judicial intervention.

"The compensation and expenses of the arbitrator totaling $8223.80 are to be borne equally by the parties. It is noted that the parties have paid their portions in full.

"This award of the arbitrator is final of all claims submitted in this arbitration matter."

*Stratford* v. *Local 134, IFPTE*, 201 Conn. 577, 585, 519 A.2d 1 (1986*); Bic Pen Corporation* v. *Local No. 134*, 183 Conn. 579, 583, 440 A.2d 774 (1981); *Waterbury Board of Education* v. *Waterbury Teachers Assn.*, 168 Conn. 54, 64, 357 A.2d 466 (1975)." *O & G/O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3*, 203 Conn. 133, 145, 523 A.2d 1271 (1987). "The well established general rule is that [w]hen the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties' agreement. . . . When the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law as long as the award conforms to the submission. . . . Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution. . . . Furthermore, in applying this general rule of deference to an arbitrator's award, [e]very reasonable presumption and intendment will be made in favor of the [arbitral] award and of the arbitrators' acts and proceedings. . . . Further, [j]udicial review of arbitral decisions is narrowly confined. . . . Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that . . . the interpretation of the agreement by the arbitrators was erroneous." (Citations omitted; internal quotation marks omitted.) *Board of Education* v. *Civil Service Employees Affiliates, Local 760*, 88 Conn. App. 559, 566–67, 870 A.2d 473 (2005).

"The significance . . . of a determination that an arbitration submission was unrestricted or restricted is not to determine what the arbitrators are obligated to do, but to determine the scope of judicial review of

what they have done. Put another way, the submission tells the arbitrators what they are obligated to decide. The determination by a court of whether the submission was restricted or unrestricted tells the court what its scope of review is regarding the arbitrators' decision." (Internal quotation marks omitted.) *Harty* v. *Cantor Fitzgerald & Co.*, 275 Conn. 72, 80–81, 881 A.2d 139 (2005).

To apply the appropriate standard of review in this case, we must first determine whether the submission was restricted or unrestricted. However, even if restricted, the breadth or narrowness of the scope of our review is necessarily limited by the nature of the restriction. *Maluszewski* v. *Allstate Ins. Co.*, 34 Conn. App. 27, 32, 640 A.2d 129, cert. denied, 229 Conn. 921, 642 A.2d 1214 (1994). The plaintiff claims that the submission in this case was restricted in scope because the contract contained provisions which excluded certain items from arbitration. The defendant claims that the submission was unrestricted because the plaintiff had rescinded the contract and only the arbitration provision, without any limitations, existed. The court found that it was restricted and we agree.

We first address the defendant's contention that by the time of the arbitration authorized by paragraph 9.10.4, paragraph 9.11 and its language limiting damages did not exist for purposes of the arbitration award because the plaintiff had rescinded the contract. The defendant cites *Metcalfe* v. *Talarski*, 213 Conn. 145, 567 A.2d 1148 (1989), and states that in that case our Supreme Court held that "[t]he effect of a rescission is to extinguish the contract and to annihilate it so effectively that in contemplation of law it has never had any existence, even for the purpose of being broken." (Internal quotation marks omitted.) Id., 159. *Metcalfe*, which did not involve arbitration, stands for the proposition that a rescission of an agreement puts an end to

that agreement for all purposes. Id. The defendant's argument in this respect is internally inconsistent because the defendant participated in the arbitration and throughout maintained that at least part of the arbitration clause continued to be effective. Moreover, the dispute that was submitted to arbitration was the defendant's claim for damages because the plaintiff terminated the contract. The defendant also relies on *Carlin Contracting Co.* v. *Blakeslee Arpaia Chapman, Inc.*, Superior Court, judicial district of New London, Docket No. 551690 (February 22, 2000) (26 Conn. L. Rptr. 466), to support its claim that the plaintiff's rescission of the contract left only the arbitration clause. The arbitration clause in this case incorporates the limiting language of paragraph 9.11 into its provisions. Therefore, regardless of whether a rescission took place, the submission is restricted.

The arbitration clause specifically excluded certain items from arbitration, and we conclude that the parties thereby restricted the arbitrator's authority. We previously have stated that "express language restricting the breadth of issues" limits the arbitrator's authority. (Internal quotation marks omitted.) *Local 1042, Council 4, AFSCME, AFL-CIO* v. *Board of Education*, 66 Conn. App. 457, 460–61, 784 A.2d 1018 (2001). "Because the parties themselves, by virtue of the submission, frame the issues to be resolved and define the scope of the arbitrator's powers, the parties are generally bound by the resulting award." *O & G/O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3*, supra, 203 Conn. 145. However, apart from those items specifically excluded from arbitration, the language of the arbitration clause is broad enough in scope to reflect the parties' general agreement to settle disputes *relating to* their contract through arbitration, including the issue of rescission.

The agreement provides in the arbitration clause, § 9.10.4, that, with some exception,[3] "[c]laims, disputes and other matters in question *arising out of* or *relating to* the [c]ontract" shall be decided by arbitration. The defendant, in its arbitration statement, claims that the plaintiff rescinded the contract and that the defendant sought damages accordingly. The plaintiff, in its answer, disagreed, stating that the contract was cancelled. The parties placed the issue of rescission before the arbitrator. Any determination with regard to rescission and which contract provisions were subsequently still in effect was within the arbitrator's scope of authority. On review, all we can determine is whether the award conformed to the submission, taking into account the restrictions. In *Maluszewski* v. *Allstate Ins. Co.*, supra, 34 Conn. App. 34, we recognized that the salutary purposes of encouraging people to arbitrate their disputes and to come to their final resolution by that means, applies even to restricted arbitration clauses. As we held in that case, if the parties engaged in voluntary, but restricted, arbitration, the trial court's standard of review would be broader or narrower depending on the specific restriction. Id., 32.

## II

The plaintiff first claims that the award does not conform to the submission and the court improperly failed to modify the award pursuant to § 52-419 (a) (2). Specifically, the plaintiff claims that the arbitrator's award improperly included damages for idle equipment and unused materials, which were consequential damages that were not arbitrable under the agreement. The defendant argues that the damages for idle equipment

---

[3] Paragraph 9.10.4 provides in relevant part: "Claims, disputes and other matters in question arising out of or relating to the contract that are not resolved by mediation, except matters relating to aesthetic effect and except those waived as provided for in paragraph 9.11 . . . shall be decided by arbitration . . . ."

and unused materials were liquidated direct damages, which were arbitrable under the agreement. We are not persuaded by the plaintiff's argument.

Paragraph 9.10.4 provides: "Claims, disputes and other matters in question arising out of or relating to the contract that are not resolved by mediation, except matters relating to aesthetic effect and *except those waived as provided for in paragraph 9.11* . . . shall be decided by arbitration . . . ." (Emphasis added.) Paragraph 9.11 provides: "The contractor and owner waive claims against each other for *consequential damages* arising out of or relating to this contract. This mutual waiver includes [and] is applicable, without limitation, to all consequential damages due to either party's termination in accordance with Article 19. Nothing contained in this paragraph 9.11 shall be deemed to preclude an award of *liquidated direct damages*, when applicable, in accordance with the requirements of the contract documents." (Emphasis added.)

"The Restatement (Second) of Contracts divides a defendant's recovery into two components: (1) direct damages, composed of 'the loss in value to him of the other party's performance caused by its failure or deficiency'; 3 Restatement (Second), Contracts § 347 (a) (1981); plus, (2) 'any other loss, including incidental or consequential loss, caused by the breach . . . .' Id., § 347 (b)." *Ambrogio* v. *Beaver Road Associates*, 267 Conn. 148, 155, 836 A.2d 1183 (2003). "[D]amages resulting from a breach of contract may be divided into those which flow naturally and usually from the breach itself, or general damages, and those which do not naturally and usually flow from such a breach, but did in this case, or special or consequential damages. As to the former, the parties need not actually have considered the possibility of their occurrence, as long as they may fairly be supposed to have considered them, while, as to the latter, to be recoverable, they must meet the

requirements of causation, certainty, and foreseeability, that is, be such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract. Stated another way, when a defendant has reason to know, before entering into the contract in question, of facts indicating that particular, though unusual, damages will follow or may follow the defendant's failure to perform its agreement, the defendant is liable for such damages." 24 S. Williston, Contracts (4th Ed. Lord 2002) § 64:12, pp. 130–31. "General damages are considered to include those damages that flow naturally from a breach, that is, damages that would follow any breach of similar character in the usual course of events. Such damages are said to be the proximate result of a breach, and are sometimes called 'loss of bargain' damages, because they reflect a failure on the part of the defendant to live up to the bargain it made, or a failure of the promised performance itself. Consequential damages, on the other hand, include those damages that, although not an invariable result of every breach of this sort, were reasonably foreseeable or contemplated by the parties at the time the contract was entered into as a probable result of a breach. These, too, must be proximately caused by the breach, and the difference is that they do not always follow a breach of this particular character." Id., 123–28.

The arbitrator awarded $26,366.67 for idle equipment and $6315.83 for materials. The award conformed to the submission. The arbitrator, in awarding damages for idle equipment and unused materials, did not award consequential damages that were not arbitrable, but general damages, which were arbitrable. "The arbitrator is only required to render an award in conformity to the submission and an award need not contain an explanation of the means by which he reached the award. . . . Every reasonable presumption and intendment

will be made in favor of the award and of the arbitrator's acts and proceedings. Hence, the burden rests on the party challenging the award to produce evidence sufficient to show that it does not conform to the submission." (Citation omitted.) *Bic Pen Corp.* v. *Local No. 134,* supra, 183 Conn. 585.

Although we do not have a record to justify a review of the facts behind the damages award for idle equipment and unused materials, in the general context, these are the type of damages that naturally flow from a breach. If a contractor, having dedicated equipment to a timely completion of the contract, is delayed for seven months because of disagreements between the office of the state building inspector and the municipality, which were not the fault of the contractor, such claims are for general not consequential damages because those damages flow directly and naturally from a breach of this kind, which delays the contractor's utilization of such equipment. The same reasoning would justify an award of damages for unused material stockpiled for the project. The restriction on an award of consequential damages therefore was not violated when the arbitrator awarded the defendant moneys for equipment downtime and the unused materials. Such damages are general damages and not consequential as they naturally follow from a breach of this kind.

### III

The plaintiff next claims that the arbitrator made two material miscalculations when awarding $104,105 for lost profits and, therefore, the court acted improperly by failing to modify the arbitration award under § 52-419 (a). Specifically, the plaintiff claims that the amount for lost profits should be recalculated because the arbitrator failed to subtract common project costs it paid up front, and it claims that the arbitrator used an incorrect

lesser amount when subtracting the defendant's written estimated costs. We disagree.

General Statutes § 52-419 (a) (1) does not apply in this case because there has not been an evident material miscalculation of figures or an evident material mistake in the description of any thing or property referred to in the award. Our Supreme Court interpreted § 52-419 (a) in *Chmielewski* v. *Aetna Casualty & Surety Co.*, 218 Conn. 646, 677–80, 591 A.2d 101 (1991). In that case, the court gave a more expansive meaning to § 52-419 (a) (1) so as to permit the modification of a compulsory arbitration award in an uninsured motorists coverage case to reflect the decedent's comparative negligence and credit that is applicable to a tortfeasor's coverage, where neither was contested by the parties in the trial court, where the modification required only undisputed mathematical calculations and where the trial court properly had upheld the arbitrators' factual findings and properly reversed their determination.[4] However, in this case, any claimed miscalculation is not evident from the succinct award, which does not contain underlying findings. Establishing such a claimed miscalculation would require an examination of exhibits and testimony and require inquiry into factual matters of how the award, in fact, was calculated. For instance, the plaintiff claims that the errors in damages calculation readily can be ascertained on the basis of two or three

[1] *Chmielewski* v. *Aetna Casualty & Surety Co.*, supra, 218 Conn. 646, involved arbitration compelled by statute, whereas this case involves a voluntary arbitration agreement. Voluntary arbitration arises where parties freely enter an agreement to settle disputes through arbitration. In *Chmielewski*, arbitration was compelled by statute for uninsured and underinsured motorists claims. "Unlike the court's more limited role in reviewing voluntary arbitration awards, where the court in most cases simply compares the award to the submission, in a compulsory arbitration case the court must have the authority to enter an appropriate order modifying the award so as to reflect those factual findings and that legal determination, and thus to effect the intent of the award as it should have been rendered under the law and to promote justice between the parties." Id., 679.

exhibits that contradict the calculations in a fourth exhibit, exhibit 59, which the plaintiff states was the basis for the arbitrator's award. This hardly is evident because no miscalculations appear on the face of the award. The plaintiff is, in essence, asking that we review the evidence presented to the arbitrator de novo. We decline to undertake such review in this case of voluntary arbitration.[5] Section 52-419 (a) (1) permits modification if there is an *evident* material miscalculation. One does not exist when the award is compared to the submission in this case.

Section 52-419 (a) (3) provides for modification of an arbitration award "if the award is imperfect in matter of form not affecting the merits of the controversy." In this case, an imperfection is not clear from the award itself, and any examination of the claimed imperfection would require this court to review the evidence and the claims between the parties. More precisely, § 52-419 (a) (3) does not apply in this case because any imperfection in the award likewise affected the merits of the controversy. See generally *Chmielewski* v. *Aetna Casualty & Surety Co.*, supra, 218 Conn. 678 n.27. Accordingly, we conclude that the court acted properly in affirming the arbitrator's award and refusing to modify it on the basis of the plaintiff's § 52-419 (a) claims.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[5] "[W]here judicial review of compulsory arbitration proceedings required by [General Statutes] 38-175c (a) (1) is undertaken under General Statutes § 52-418, the reviewing court must conduct a de novo review of the *interpretation and application of the law by the arbitrators.*" (Emphasis added.) *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 191, 530 A.2d 171 (1987).